# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DERRICK HAMPTON,

        Petitioner,        Case Number: 08-CV-10147

v.        HON. PAUL D. BORMAN
        UNITED STATES DISTRICT JUDGE

LINDA METRISH,

        Respondent.
_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS AND (2) DENYING CERTIFICATE OF APPEALABILITY

Petitioner Derrick Hampton has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C.§ 2254. Petitioner, who is incarcerated at the Kinross Correctional Facility in Kincheloe, Michigan, challenges his convictions for second-degree murder and felony firearm. For the reasons set forth below, the Court denies the petition.

## I.

Petitioner's convictions arise from the shooting death of Petitioner's girlfriend Nicole Farr, on January 24, 1992, in his apartment in Detroit, Michigan.

Nekael Jones testified that, on January 24, 1992, at approximately 2:00 a.m., he and Wakili Thompson were walking into his apartment building when he heard arguing coming from the first apartment. He heard a woman's voice say, "Stop hitting me." Tr., 5/6/92, at 11. Then, he heard a gunshot. Farr, who was naked, ran out of the apartment and said, "He shot me in my side." *Id.* Jones ran to Wakili's apartment and called 911. After police came, Jones heard police ask Petitioner his name. Petitioner responded, "Derrick Fox." *Id.* at 16. After hearing

this, Farr said to police, "No, it's not, he's lying.  His name is Derrick Lavelle Hampton." *Id.*

Wakili Thompson testified that, on the day of the shooting, he and Jones returned to his apartment building during the early morning hours.  As they entered the building, he heard a woman screaming.  He heard her holler, "Stop hitting me on the face." *Id.* at 22.  He heard a gunshot and then saw Farr run out of the apartment.  Farr lay down on the floor and Thompson covered her with a blanket.  He heard her tell police that Derrick Hampton shot her.

Detroit Police Officer Darryl Gordon testified that he responded to the shooting at approximately 2:25 a.m., on January 24, 1992.  He found Farr on the hallway floor bleeding from her side.  She told Officer Gordon that she had been shot by her boyfriend.  As Officer Gordon walked toward the apartment indicated by Farr, Petitioner came out and Officer Gordon placed him under arrest.  Petitioner told Officer Gordon that Farr was shot accidentally.  According to Petitioner, his girlfriend got up from bed.  When he got up, a gun, which had been in bed with them, fell on the floor and accidentally discharged.

Detroit Police Officer Monica Childs testified that she was working as a homicide investigator at the time of Farr's death.  She testified that she took a custodial statement from Petitioner.  Petitioner stated that, on the night of the shooting, Farr woke him up because she had found used condoms in the trash can.  When he started waking up, Petitioner began swinging at her.  He reached on the side of the bed to retrieve his gun.  When he did so, Farr moved toward the door.  Farr was in the doorway and Petitioner raised the gun.  Petitioner stated that the gun discharged accidentally.  He admitted to pointing the gun in her direction and having his finger on the trigger.  He denied intentionally shooting her, claiming that he was simply trying to scare her.

The parties stipulated that, if Dr. Sawait Kanluen testified, he would testify that he performed an autopsy on Nicole Farr and determined that she died of a gunshot wound to the abdomen. Further, he would have testified that he saw no evidence of close-range firing.

Petitioner testified in his own defense. He testified that he was asleep in his bedroom when Farr woke him by hitting him in the face and demanding to know if he had been intimate with other women. He struck her. He then grabbed his gun. He testified that he wanted to scare her so that he could go back to sleep. He testified that he did not want to shoot her and that the gun discharged accidentally.

## II.

Following a bench trial in Wayne County Circuit Court, Petitioner was convicted of second-degree murder and felony firearm. On May 27, 1992, he was sentenced to life imprisonment for the second-degree murder conviction, to be served consecutively to two years imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals presenting the following claim for relief:

> I.  Did the defense counsel render ineffective assistance of counsel so as to warrant reversal and remand of this cause where defense counsel failed to subpoena necessary witnesses requested by defendant/appellant, where defense counsel failed to introduce necessary evidence regarding the defense, and where defense counsel failed to object to the trial court's violation of defendant-appellant's right to remain silent in its findings of fact?

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Hampton*, No. 155626 (Mich. Ct. App. March 4, 1994). Petitioner's application for leave to appeal to the Michigan Supreme Court was rejected for filing because it was received beyond the 56-day time limit. *See* Affidavit of Corbin R. Davis, Clerk, Michigan Supreme Court, July 16, 2008.

3

On February 9, 2005, Petitioner filed a motion for relief from judgment in the trial court, raising the following claims: (i) the trial judge's findings of fact were erroneous, (ii) ineffective assistance of trial counsel; and (iii) ineffective assistance of appellate counsel.  The trial court denied the motion.  *People v. Hampton*, No. 92-01768 (Wayne County Circuit Court Aug. 15, 2005).  The trial court denied Petitioner's motion for reconsideration.  *People v. Hampton*, No. 92-01768 (Wayne County Circuit Court Oct. 31, 2005).  Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, which denied leave to appeal on January 31, 2007.  *People v. Hampton*, No. 271583 (Mich. Ct. App. Jan. 31, 2007).  Petitioner filed an application for leave to appeal in the Michigan Supreme Court, which was also denied.  *People v. Hampton*, No. 133328 (Mich. June 26, 2007).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the following claims:

   I.   Petitioner's substantial showing of innocence excuses procedural defaults and statute of limitations and allows his constitutional claims to be heard on the merits.

   II.  In a bench trial, the trial court improperly found facts prejudicial to Petitioner, not supported by the evidence and directly contradicted by the evidence which violated his constitutional rights.

   III. In a murder case where the defense was that the gun went off by accident, defense counsel severely prejudiced Petitioner by failing to get expert testimony in support of his claim, and other shortcomings.

   IV.  Petitioner was prejudiced by ineffective assistance of counsel on appeal.

### III.

Respondent argues that the petition was not timely filed.  The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA" or "the Act") applies to all habeas petitions filed after the effective date of the Act, April 24, 1996, and imposes a one-

year limitations period on habeas corpus petitions. A prisoner must file a federal habeas corpus petition within one year of the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Where a prisoner's conviction became final prior to the effective date of the AEDPA, the prisoner is permitted one year from the AEDPA's effective date to file a petition for habeas corpus relief in federal court. *Austin v. Mitchell*, 200 F.3d 391, 393 (6th Cir. 1999). In addition, the time during which a prisoner seeks state-court collateral review of a conviction does not count toward the limitations period. 28 U.S.C. § 2244(d)(2). However, a properly filed application for state post-conviction relief, while tolling the statute of limitations, does not serve to restart the limitations period. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003).

In this case, Petitioner's conviction became final before the AEDPA's effective date, April 24, 1996. Therefore, absent state collateral review, Petitioner was required to file his application for habeas corpus relief by April 24, 1997, to comply with the one-year limitations period. Petitioner failed to do so. His motion for relief from judgment was filed in the trial court in February 2005, approximately eight years after the limitations period expired. Therefore, it did not serve to toll the limitations period.

Petitioner concedes that his petition was not filed within the one-year limitations period, but maintains that he is entitled to equitable tolling of the limitations period.

"Because AEDPA's one-year statute of limitations is not jurisdictional, a petitioner who misses the deadline may still maintain a viable habeas action if the court decides that equitable tolling is appropriate." *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004), citing *Dunlap v. United States*, 250 F.3d 1001, 1007 (6th Cir. 2001). Petitioner argues that the limitations period

should be equitably tolled because he is actually innocent. Actual innocence can be a basis for equitable tolling when a petitioner "can present new evidence which undermines this court's confidence in the outcome of the trial." *Souter v. Jones*, 395 F.3d 577, 600 (6th Cir. 2005). "Where an otherwise time-barred habeas petitioner can demonstrate that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying constitutional claims." *Id.* at 602. The relevant inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Schlup v. Delo*, 513 U.S. 298, 317 (1995). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Id.* at 324. *Schlup* "does not require absolute certainty about the petitioner's guilt or innocence," but it "is [a] demanding [standard] and permits review only in the extraordinary case." *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks omitted).

The new evidence presented by Petitioner which he argues cast sufficient doubt about his guilt to undermine confidence in the result of the trial is the affidavit of a purported firearms expert, Steven Howard. (The Court assumes for purposes of this analysis that the affiant would qualify as a firearms expert, but makes no finding as to affiant's qualifications as an expert.) In his affidavit, Howard states that the firearm used in this crime was not in proper working order, and that he found several errors in the testimony regarding the firearm. Notably, Howard states that, contrary to testimony presented at trial, he concluded, based upon the fact that 17 rounds of ammunition remained in the pistol after the fatal shot was fired, that a bullet was chambered prior

to the shooting. In other words, according to Howard, the pistol was made ready "ahead of time" and Petitioner did not have to chamber a round before the pistol was fired. Howard also states that the laboratory report admitted at trial indicated that the trigger pull on the murder weapon was 3.4 pounds, but the manufacturer's website indicates the trigger pull should be 5.5 pounds. Howard concluded that "the pistol in question was already cocked, fully loaded, and ready to fire without any further action before it was ever touched on the night in question." Affidavit at 5.

Under Michigan law, the elements of second-degree murder are: "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v. Goecke*, 457 Mich. 442, 463-464 (1998). Malice is defined as a state of mind consisting of "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id*. at 464. The offense of second-degree murder "does not require an actual intent to harm or kill, but only the intent to do an act that is in obvious disregard of life-endangering consequences." *Long v. Stovall*, 450 F. Supp. 2d 746, 753 (E.D. Mich.2006) (quoting *People v. Mayhew*, 236 Mich. App. 112, 125 (1999)). The Michigan Court of Appeals has held that malice may be inferred where a defendant points a loaded gun at a victim. *See People v. Laury*, 2003 WL 22204882, *2 (Mich. Ct. App. September 23, 2003) (requisite intent established to support second-degree murder conviction where defendant pointed loaded gun at victim's head and, according to defendant, it accidentally discharged); *People v. Gaines*, 1997 WL 33347860, *2 (Mich. Ct. App. June 17, 1997) (holding malice may be inferred to support a second-degree murder conviction where defendant grabbed a gun, which he knew was loaded, and pointed it at the victim's head with the intent to scare him); *People v. Sanders*, 1996 WL 33364206, *1 (Mich.

Ct. App. May 24, 1996) (holding "defendant's contention that the gun accidentally went off is not a defense to the fact that he knowingly created a high risk of death when he pointed the gun at the victim's head in the first place").

Petitioner admitted in his custodial statement and in his trial testimony that, on the night of the shooting, the victim woke him and began accusing him of sleeping with other women. He swung at her. She got up to leave the room. He pulled a handgun from the side of the bed. He raised the gun and pointed it at her, while telling her to stop messing with him. He admitted to having his finger on the trigger and stated that he was just trying to scare her. According to Petitioner, the gun accidentally discharged and he had no intention of shooting her. At trial, the parties stipulated that the state's firearms expert, if presented, would testify that he tested the murder weapon and it was in operable condition and the trigger pull was characterized as normal for this firearm.

The Howard affidavit does not present a compelling case of actual innocence. Under Michigan law, Petitioner's actions of pointing a loaded weapon at his girlfriend while in a heated argument with the intention of scaring her were sufficient to establish the malice element of second-degree murder. Thus, the Court finds that Petitioner's claim fails to present a compelling picture of actual innocence which would warrant equitable tolling. Accordingly, Petitioner has not satisfied the "gateway requirements" for excusing a time-barred petition. Additionally, the Court finds that failure to consider Petitioner's claims will not result in a fundamental miscarriage of justice.

## IV.

A district court, in its discretion, may decide whether to issue a certificate of appealability

("COA") at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination. *Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002). The Court concludes that it is presently in the best position to decide whether to issue a COA. *See id.* at 901, (*quoting Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir.1997)), overruled in part on other grounds by *Lindh v. Murphy*, 521 U.S. 320 (1997)) ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,'" the district judge is, at that point, often best able to determine whether to issue the COA.).

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that the petition is untimely. Therefore, the Court denies a certificate of appealability.

**V.**

The Court finds that Petitioner failed to file his habeas petition within the applicable one-year limitations period and that equitable tolling of the limitations period is not warranted.

Accordingly, **IT IS ORDERED** that Respondent's Motion to Dismiss is **GRANTED** and the petition for a writ of habeas corpus is **DISMISSED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

        S/Paul D. Borman  
        PAUL D. BORMAN  
        UNITED STATES DISTRICT JUDGE

Dated: November 13, 2009

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on November 13, 2009.

        S/Denise Goodine  
        Case Manager